PHILIP V.,

      Plaintiff,

  v.

NANCY A. BERRYHILL,
Commissioner of Social Security,

      Defendant.

No. 3:18-CV-0082 (CFH)

**APPEARANCES:**

Lachman, Gorton Law Firm
P.O. Box 89
1500 East Main Street
Endicott, New York 13761-0089
Attorney for plaintiff

Social Security Administration
Office of Regional General Counsel,
Region II
26 Federal Plaza, Rm. 3904
New York, New York 10278
Attorney for Defendant

**OF COUNSEL:**

PETER A. GORTON, ESQ.

VERNON NORWOOD, ESQ.
Special Assistant U.S. Attorney

**CHRISTIAN F. HUMMEL
U.S. MAGISTRATE JUDGE**

## MEMORANDUM-DECISION AND ORDER

Plaintiff Philip V. brings this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits. Dkt. No. 1 ("Compl.").[1] Plaintiff moves for a

---

[1] Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), FED. R. CIV. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18. Dkt. No. 7.

finding of disability or remand for a further hearing, and the Commissioner cross-moves for a judgment on the pleadings. Dkt. Nos. 9, 12. Plaintiff filed a reply. Dkt. No. 13. For the following reasons, the determination of the Commissioner is affirmed.

## I. Relevant Background

### A. Factual Background

At the time of the hearing, plaintiff was a thirty-six-year-old male who lived at home with his wife and six children. T. 35.[2] Plaintiff received his GED, and completed two semesters of community college and "some trade school." Id. Plaintiff previously worked with heating and air conditioners and in restaurant management. Id.

### B. Procedural Background

On May 22, 2014, plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits. T. 152-53. Plaintiff alleged disability beginning on March 18, 2014. Id. at 152. Plaintiff's application for disability benefits was initially denied on August 22, 2014. Id. at 67-71. Plaintiff requested a hearing, and a hearing was held on August 15, 2016 before Administrative Law Judge ("ALJ") Marie Greener. Id. at 29-46,79-81. ALJ Greener determined that plaintiff "ha[d] not been under a disability, as defined in the Social Security Act, from March 18, 2013, through the date of this decision." Id. at 22. The Appeals Council denied plaintiff's request for

---

[2] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. Dkt. No. 8. Citations refer to the pagination in the bottom right-hand corner of the administrative transcript, not the pagination generated by CM/ECF.

2

review, making the ALJ's findings the final determination of the Commissioner. Id. at 1-6. Plaintiff commenced this action on January 19, 2018. See Compl.

## C. ALJ Decision

Applying the five-step disability analysis, the ALJ determined that plaintiff had not engaged in substantial gainful activity since March 18, 2013, the alleged onset date. T. 17. The ALJ found at step two that plaintiff had the severe impairment of right ankle avascular necrosis. Id. At step three, the ALJ determined that plaintiff did not an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 18. Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to "perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he should climb stairs occasionally." Id. At step four, the ALJ determined that plaintiff was unable to perform any past relevant work. Id. at 21. At step five, the ALJ determined that, considering plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could perform. Id. at 22. Thus, the ALJ determined that plaintiff "ha[d] not been under a disability, as defined by the Social Security Act from March 18, 2013, through the date of this decision." Id.

## II. Legal Standard

### A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)).  The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder *would have to conclude otherwise*."  Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotations marks omitted).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence.  See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986).  However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial evidence may support the

plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

### B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. § 423(d)(1)(A). A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based on his or her age, education, and work experience. Id. § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3). Additionally, the severity of the impairments is "based [upon] objective medical facts, diagnoses or medical opinions inferable from the facts, subjective complaints of pain or disability, and educational background, age, and work experience." Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

5

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added). The plaintiff bears the initial burden of proof to establish each of the first four steps. See DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (citing Berry, 675 F.2d at 467). If the inquiry progress to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere. Id. at 1180 (citing Berry, 675 F.2d at 467).

### III. The Parties' Arguments

Plaintiff first argues that the ALJ's RFC determination was not supported by

substantial evidence. Dkt. No. 9 at 8-15. Specifically, plaintiff contends that the ALJ (1) improperly substituted her lay opinion for that of two medical opinions in the record; (2) failed to include a sit/stand option; and (3) violated the treating physician rule. See id. Plaintiff also argues that the ALJ's step five determination is not supported by substantial evidence. Id. at 15-16. Conversely, the Commissioner argues that the ALJ properly assessed plaintiff's RFC, and that "plaintiff retain[s] the RFC to perform work that exists in significant numbers in the national economy." Dkt. No. 12 at 9-14.

## IV. Analysis

### A. The ALJ's Analysis of Opinion Evidence and Plaintiff's RFC

When evaluating a claim seeking disability benefits, factors to be considered by the ALJ include objective medical facts, clinical findings, the treating physician's diagnoses, subjective evidence of disability, and pain related by the claimant. See Harris v. R.R. Ret. Bd., 948 F.2d 123, 126 (2d Cir.1991). Generally, more weight is given to a treating source. Under the regulations, a treating source's opinion is entitled to controlling weight if well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2) (2005); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000). "This rule applies equally to retrospective opinions given by treating physicians." Campbell v. Astrue, 596 F. Supp. 2d 445, 452 (D.Conn. 2009) (citations omitted). Before a treating physician's opinion can be discounted, the ALJ must provide "good reasons." Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).

7

The ALJ is required to assess the following factors in determining how much weight to accord the physician's opinion: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal, 134 F.3d at 503. If other evidence in the record conflicts with the opinion of the treating physician, this opinion will not be deemed controlling or conclusive, and the less consistent the opinion is, the less weight it will be given. See Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999) (citation omitted). Ultimately, the final determination of disability and a claimant's inability to work rests with the Commissioner. See id. at 133-34; 20 C.F.R. § 404.1527(e) (2005).

RFC describes what a claimant is capable of doing despite his or her impairments, considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations beyond the symptoms. See Martone, 70 F. Supp. 2d at 150; 20 C.F.R. §§ 404.1545, 416.945. "In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capabilities are not sufficient." Martone, 70 F. Supp. 2d at 150. The ALJ then uses the RFC to determine whether the claimant can perform his or her past relevant work. See New York v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); 20 C.F.R. §§ 404.1545, 416.960. If it is determined that a claimant cannot perform past relevant work, "the burden shifts to the Commissioner to determine whether there is other work which the claimant could perform." Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999).

When assessing a claimant's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of social security disability.  See also Frey ex rel. A.O. v. Astrue, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); Little v. Colvin, No. 14-CV-0063, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims.  As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted).  "An ALJ should consider 'all medical opinions received regarding the claimant.'"  Reider v. Colvin, No. 15-CV-6517, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting Spielberg v. Barnhart, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005)); see also SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).  The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant.  20 C.F.R. §§ 404.1527(c)(1)-(6).

The ALJ found that plaintiff could "perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he should climb stairs occasionally."  T. 18.  The regulations define sedentary work as work that

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers,

9

and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a).

### 1. Relevant Medical Evidence

In assessing the medical opinion evidence in the record, the ALJ noted that plaintiff's "allegations of debilitating symptoms [were] not fully consistent with" Dr. Rita Figueroa's medical opinion. T. 19. Plaintiff met with Dr. Figueroa in August 2014 for an Internal Medicine Examination. Dr. Figueroa indicated that plaintiff "appeared to be in no acute distress." Id. at 277. Although plaintiff walked with a right boot, his gait was normal. Id. He could not walk on his heels or toes. Id. Plaintiff's squat was "2 out of 4," and his stance was normal. Id. Despite the boot, he did not need help changing for the examination or getting on and off the examination table. Id. at 277-78. Plaintiff was able to rise from his chair without difficulty. Id. at 278. Plaintiff's cervical spine showed full flexion, extension, lateral flexion bilaterally, and fully rotary movement. Id. Plaintiff had full range of motion in his shoulders, elbows, forearms, and wrists bilaterally. Id. He also had full range of motions in his hips and knees bilaterally. Id. Plaintiff's left ankle had full range of motion, but his right ankle was limited in dorsiflexion to ten degrees and limited plantar flexion to ten degrees. Id. Plaintiff's joints were stable with no redness, heat, or effusion. Id. Dr. Figueroa indicated that plaintiff's right outer ankle had tenderness and mild swelling. Id. at 279.

Dr. Figueroa diagnosed plaintiff with right ankle avascular necrosis and lupus.  T. 279.  She opined that plaintiff had marked limitations for "activities requiring prolonged walking and standing due to his right ankle avascular necrosis."  Id.  Dr. Figueroa noted that plaintiff may also have limitations going up and down stairs.  Id.  Plaintiff's prognosis was fair.  Id.  The ALJ granted Dr. Figueroa's August 2014 opinion "great weight based on her programmatic expertise," and noted that she "accounted for the limitations identified in her assessment within the established residual functional capacity by limiting [plaintiff] to sedentary work with limitations for climbing stairs."  Id. at 19.  The ALJ also found that "Dr. Figueroa's opinion is generally consistent with the objective evidence in the record."  Id.

The ALJ next assessed the Treating Source Statement from Kacy Zelesnikar, RPA-C and Dr. Arvin Aranda, plaintiff's primary care providers.  T. 19, 320-21.  In the November 2014 questionnaire, the providers noted that they treated plaintiff for avascular necrosis and lupus.  Id. at 320.  They indicated that these diagnoses would cause plaintiff pain and fatigue, would diminish his concentration and work pace, and would cause him to need rest at work.  Id.  Based on that assessment, they opined that plaintiff would be off-task more than 33 percent of the day.  Id.  They noted that plaintiff would have good days and bad days, and that the bad days would lead him to be absent from work for more than four days per month.  Id. at 320-21.  RPA-C Zelesnikar and Dr. Aranda indicated that plaintiff needed to alternate between sitting and standing every twenty minutes, and that he could stand and/or walk for two hours out of an eight-hour day.  Id. at 321.  They also opined that plaintiff could lift up to five pounds for up to

11

two-third of a day, up to ten pounds up to one-third of a day, and never lift over ten pounds. Id.

The ALJ granted "some weight" to the providers' lifting, standing, and walking limitations "because their office provided [plaintiff] with treatment." T. 19. However, she gave "limited weight to the remainder of the assessment, because it is not supported by the evidence in the record." Id.

Finally, the ALJ evaluated the July 2016 questionnaire from Dr. Richard Looney, plaintiff's rheumatologist. T. 20, 453-54. Dr. Looney indicated that he treated plaintiff for fibromyalgia, lupus, and lower back and ankle pain. Id. at 453. He indicated that these diagnoses would likely cause plaintiff pain and fatigue, and that they would diminish plaintiff's concentration and work pace. Id. Dr. Looney indicated that plaintiff would need to rest at work. Id. Based on that assessment, Dr. Looney opined that plaintiff would be off-task more than 33 percent of the day. Id. When asked if plaintiff's conditions could be expected to produce good days and bad days, Dr. Looney wrote "all days are bad." Id. He noted that plaintiff would likely miss more than four days of work per month. Id. at 454. Dr. Looney noted that plaintiff could sit for fifteen to twenty minutes out of a eight-hour work day, and that plaintiff should change positions approximately every fifteen minutes. Id. Dr. Looney further stated that plaintiff could stand and/or walk for fifteen minutes out of an eight-hour day, and should not lift objects of any weight. Id. The ALJ afforded Dr. Looney's questionnaire "limited weight." Id. at 20.

12

## 2. Court's Analysis

Plaintiff contends that the ALJ violated the treating physicians' rule because "Drs. Aranda and Looney are treating physicians whose opinions are well-supported and . . . there are no contrary medical opinions." Dkt. No. 9 at 15. The Court disagrees. The ALJ adequately summarized the evidence of record, including the various opinions and treatment notes. T. 18-21. Further, the ALJ provided sufficient reasons for the weight afforded to Dr. Looney, Dr. Figueroa, Dr. Aranda, and PA Zelesnikar's medical opinions. See id. The ALJ assigned Dr. Looney's opinion "limited weight . . . because the significant functional limitations he identified are not supported by an underlying 'severe' or medically determinable impairment." T. 20. In the questionnaire, Dr. Looney "did not definitively determine the cause of [plaintiff's] reported fatigue and pain." Id. Dr. Looney's questionnaire also notes that plaintiff's fibromyalgia is "most likely the cause of [plaintiff's] fatigue and . . . pain", and that plaintiff's lupus is "relatively inactive." Id. at 453. The ALJ does not overlook these findings, as plaintiff suggests, Dkt. No. 9 at 13, but instead, does not find them to be medically determinable impairments. See T. 18 ("Although the claimant has lupus, progress notes indicated that clinically he was asymptomatic without any evidence of active lupus and he was doing well in terms of lupus . . . . Despite references to fibromyalgia, rheumatology records did not document tender points consistent with the condition.") (citing id. at 264, 333, 336, 336).

The ALJ found that the restrictive limitations set forth in Dr. Looney's July 2016 questionnaire were inconsistent with other objective medical evidence in the record,

13

namely his own treatment records. T. 20. As the Commissioner points out, Dr. Looney's records from September 2013 through February 2016 demonstrate unremarkable findings, including full muscle strength and a full range of motion in plaintiff's arms, legs, and spine. See id. at 264, 268, 329, 332-33, 335-36, 338-39; Dkt. No. 12 at 10-11. Plaintiff treatment notes also establish that plaintiff's ankle had improved post-surgery, and indicate that he had "[e]xcellent strength," "no crepitus," and that his "ankle was stable." See id. at 336, 443. Plaintiff's treatment notes further indicate that after the follow-up surgery on his right ankle, imaging showed "satisfactory alignment of the ankle and hardware placement." Id. at 448. In May 2016, plaintiff's treatment records demonstrate that the alignment in plaintiff's ankle remained "satisfactory," and that the ankle was stable. Id. at 452. For the aforementioned reasons, the ALJ determined that Dr. Looney's report was inconsistent with other substantial evidence in the record, including his own treatment notes, and assigned it reduced weight. Thus, this determination is supported by substantial evidence.

As to Dr. Aranda and RPA-C Zelesnikar, the ALJ's decision to afford "some weight" to their lifting, standing, and walking limitations, and "limited weight" to the remainder of the assessment is supported by substantial evidence. See T. 19. Plaintiff argues that the ALJ erred in failing to adopt Dr. Aranda's work pace and/or attendance limitations and sit/stand option. Dkt. No. 9 at 9-15. He argues that the ALJ's failure to include the limitations assessed in these opinions amounts to "a clear substitution of [her] opinion for the opinion of all physicians who opined on the subject." Id. at 14.

Although an "'ALJ cannot arbitrarily substitute his own judgment for competent

14

medical opinion' he [or she] remains 'free to choose between properly submitted medical opinions' and to rely on those opinions in reaching his disability determination." Kessler v. Colvin, 48 F. Supp. 3d 578, 597 (S.D.N.Y. 2014) (internal citation omitted). Although a treating physician's opinion is not binding on the Commissioner, the opinion must be given controlling weight when it is well supported by medical findings and not inconsistent with other substantial evidence in the record. See Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. § 416.927(d). Where the treating physician's opinion is contradicted by other substantial evidence, the ALJ is not required to give the opinion controlling weight. See Halloran, 362 F.3d at 32-33. The ALJ must, however, properly analyze the reasons that the report is rejected. See id. An ALJ may not arbitrarily substitute his or her own judgment for competent medical opinion. See Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999).

Here, the ALJ discussed his reasoning for failing to include the sit/stand option and work pace and/or attention limitations found in Dr. Aranda and RPA-C Zelesnikar's opinion; the ALJ explained that the "remainder of their assessment," which included the sit/stand, work place, and attention limitations, was "not supported by the evidence in the record." T. 19. The ALJ found that RPA-C Zelesnikar and Dr. Aranda "indicated that the limitations they identified were based on [plaintiff's] lupus, but as noted above, this condition is asymptotic and has not resulted in any functional limitations." Id. To the extent that Dr. Aranda and RPA-C Zelesnikar and/or Dr. Looney's medical source statement referenced a propensity for "bad days," see id. at 320-21, 453, plaintiff testified that on his bad days, he "sit[s] on [his] couch and tr[ies] to conduct the

15

children," watches movies, plays video games, and reads. Id. at 43.  Thus, to the extent that plaintiff may have "bad days" each month, the ALJ found his testimony inconsistent with the restrictive limitations set forth by Dr. Aranda, RPA-C Zelesnika, and Dr. Looney, and consistent with the requirements of sedentary work.  See id. at 21.

Moreover, the ALJ indicated that the sit/stand option is contradicted by other evidence in the record, including plaintiff's "self-reports, and postoperative records that showed improvement in his right ankle and foot pain following his most recent surgery." Id. (citing id. at 36-37, 185-86, 452).  Further, the ALJ relied on the medical evidence found in plaintiff's treatment records, including satisfactory examination findings and ankle alignment post-surgeries, as discussed above.  See subsection IV.A.2. supra, at 14.

The ALJ's RFC determination is consistent with Dr. Figueroa's opinion, wherein she indicated generally unremarkable findings aside from a limited range of motion in plaintiff's right ankle.  T. 276-79.  Based on her physical examination of plaintiff, Dr. Figueora did not assess a sitting limitation, but notes marked limitations for walking and standing.  T. 279.  Thus, the ALJ properly found that "the objective evidence in [the] record supports the conclusion that [plaintiff] remains capable of sedentary work activity, and contradicts the significant functional limitations identified by RPA-C Zelesnikar, Dr. Aranda, and Dr. Looney."  T. 20.

Moreover, although "it is well-settled that the performance of basic daily activities does not necessarily contradict allegations of disability, as people should not be penalized for enduring the pain of their disability in order to care for themselves,"

16

Battease v. Comm'r of Soc. Sec., No. 3:15-CV-867 (ATB), 2016 WL 3824146, at *7 (N.D.N.Y. July 13, 2016) (internal quotations omitted), the Court concludes that the ALJ did not err in determining that plaintiff "maintained a broad range of daily activities that is consistent with the established residual functional capacity," including taking part in cleaning, cooking, providing childcare, as well as walking around the campus of his community college T. 20, 40-43, 277, 280, 282. Plaintiff's testimony and self-reporting, in addition to the medical evidence described above, are consistent with the ALJ's finding that plaintiff could "perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he should climb stairs occasionally." Id. at 18. Thus, the ALJ's reliance, in part, on plaintiff's activities of daily living was not in error. See Martone, 70 F. Supp. 2d at 153 ("In summary, the objective medical evidence, the conservative treatment which plaintiff receives, as well as plaintiff's daily activities all belie plaintiff's claims of disabling pain and functional limitations. Therefore, substantial evidence supports the ALJ's decision to not fully credit plaintiff's subjective allegations.").

Insofar as plaintiff argues that, in the absence of a medical opinion to support the ALJ's finding that plaintiff did not have sit/stand option, work pace, and attention limitations, the ALJ improperly substituted her own lay interpretation of the evidence for a competent medical opinion, see Dkt. No. 9 at 10-12 (citing Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998)), the Court finds that this argument is misplaced. There is no indication in the record that the ALJ improperly substituted her own interpretation of the medical evidence for the opinions of plaintiff's treating physicians; rather, the ALJ assessed the totality of the medical evidence in the record and determined that the

RFC was "supported by the weight of the evidence, the opinion evidence of Dr. Figueora, and the longitudinal medical record which indicates that [plaintiff] is capable of working." T. 21.

The ALJ has the responsibility of reviewing all the evidence before him, resolving inconsistencies, and making a determination consistent with the evidence as a whole. See Bliss v. Colvin, No. 13-CV-1086, 2015 WL 457643, at *7 (N.D.N.Y., Feb. 3, 2015). "[I]t is the province of the ALJ to consider and resolve conflicts in the evidence as long as the decision rests upon 'adequate findings supported by evidence having rational probative force.'" Camarata v. Colvin, No. 14-CV-0578, 2015 WL 4598811, at *9 (N.D.N.Y. July 29, 2015) (quoting Galiotti v. Astrue, 266 F. App'x 66, 67 (2d Cir. 2008) (summary order)). It is clear from the ALJ's overall decision that she appropriately considered the evidence before her, including the numerous opinions of record.

As such, the Court's review of the ALJ's overall decision indicates that she properly reviewed the evidence of record and provided sufficient explanation for his analysis. For the reasons above, the Court therefore finds that the ALJ's RFC determination (including his analysis of the opinion evidence) and overall finding that plaintiff is not disabled are supported by substantial evidence. Remand is not required on these bases.

### B. Step Five Determination

The Court finds that the ALJ's finding that plaintiff was capable of performing a significant number of jobs in the national economy is supported by substantial evidence

in the record. As stated above, the ALJ properly determined plaintiff's RFC, and substantial evidence in the record supports that finding. See T. 26. Because the ALJ posed a hypothetical based on that RFC, and the jobs that the vocational expert set forth all constitute sedentary work with the limitations set forth in the RFC, the Court finds that the step five determination is supported by substantial evidence. See id.

## V. Conclusion

**WHEREFORE**, for the reasons stated above, it is hereby

**ORDERED**, that the plaintiff's motion (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED**, that the Commissioner's motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve copies of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated: January 28, 2019
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge